[Crim. No. 610. Fifth Dist. Jan. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WENDELL WAYNE ODOM, Defendant and Appellant.

COUNSEL

Lerrigo, Thuesen & Thompson, Gerald L. Thuesen, Timothy R. Nibler, Sandell & Hill and Floyd S. Hill for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GARGANO, J.**—Appellant was charged with murder in the second degree in the first count of the information, and after jury trial was convicted of voluntary manslaughter.[1] His appeal centers on the perplexing question which came into existence when the trial judge purported to dismiss the murder charge, presumably pursuant to Penal Code section 1118.1, while at the same time declaring that the court retained jurisdiction over the lesser included offense of voluntary manslaughter.[2] He contends that because he was not charged with voluntary manslaughter in a separate count, the court's dismissal of the charge of murder not only resulted in an acquittal of that charge, but by necessity resulted in an acquittal of the lesser included offense as well. The thrust of appellant's argument is that the jury's verdict finding appellant guilty of voluntary manslaughter, after he was acquitted by the court of murder, is contrary to the mandate of Penal Code section 1118.2, which states that an acquittal under section 1118.1 is a bar to further prosecution. On the other hand, respondent argues that the court's order dismissing the murder charge was a nullity from the inception and, because it inured to appellant's benefit, he had no reason to complain.

The relevant facts of this bizarre case are these: Appellant was initially charged with voluntary manslaughter in violation of Penal Code section 192.1, and assault with a deadly weapon in violation of Penal Code section 245. Subsequently, the district attorney filed an amended information charging appellant with murder in the second degree instead of voluntary manslaughter. The cause proceeded to trial on this basis.

---

[1] Appellant was also convicted of assault with a deadly weapon as charged in count II of the information. However, he does not challenge his conviction on this count.

[2] Section 1118.1 reads as follows: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

On the fifth day of trial, at the conclusion of the presentation of the People's case, appellant moved for a "dismissal" of the charge of murder in the second degree under section 1118.1 of the Penal Code. This is what he said: "Your Honor, the People rested yesterday afternoon. That means their case is concluded. At this time the defendant, Wayne Odom, will move for a dismissal of the charge of murder under the provisions of 1118.1. This is a new code section . . ."

The court then answered: "I am not familiar with it. Unfortunately this is the first murder case the court has actually tried since it returned from Juvenile, and the statute was not in existence the last time I tried a murder case."

Defense counsel went on to explain that the statute provided that at the close of either party's evidence a motion for dismissal could be made for insufficiency of the evidence under the law, and that he felt that his motion should be granted on that basis. After more discussion, the trial judge said: "I am not concerned with what the appellate court is going to do. . . . I am concerned with what the court is going to do here. What I want to know from you is don't you, from the facts which you have presented, have at the very best a weak manslaughter case?"

Then the court added: "Well, you have to look to the intent of the statute. What is it intended to correct; the scope of it? All right. The court needs no more argument. Motion of the defendant to dismiss the murder charge is granted and the murder charge is dismissed. The case will go to the jury on the question of whether there is manslaughter, and whether it's justifiable homicide. All right, call the jury. The evidence is inadequate to support a murder charge under the facts of the case."

After the court granted appellant's motion, his counsel made an opening statement to the jury and then commenced to present evidence in appellant's defense of the remaining charges, voluntary manslaughter and assault with a deadly weapon. Sometime later the following transpired.

"MR. MITCHELL: At this time, your Honor, I would like the record to be clear as to what charges that we are proceeding against the defendant at this time.

THE COURT: The included offense of manslaughter and assault as charged in Count Two.

MR. MITCHELL: All right. The People would like to have the defendant and counsel consent to this, your Honor—on our—

THE COURT: Consent? I didn't dismiss the manslaughter charge.

MR. WANGER: Your Honor—

THE COURT: Is it necessary?

MR. MITCHELL: We feel it's necessary, your Honor, for the record.

THE COURT: He made the motion. It's at his request. I don't think there is any necessity for it but—

MR. HILL: Your Honor, this catches me as a little surprise, and I would like to research the law on it. I made the motion, it is true enough, and well, I just am not in a position to answer without researching the point. This is a new code section as I indicated to the Court.

THE COURT: Well, it was not the Court's intent to do anything other than to reduce the charge from second degree murder to manslaughter. In other words, any doubt in anybody's mind, I will have to set aside the granting of the motion on mistaken inadvertence if there is any problem for anybody.

MR. WANGER: If the People could be heard very briefly, our understanding of 1118.2 which reads as follows:

'A judgment of acquittal entered pursuant to the provision of Section 1118, or 1118.1 shall not be appealable and is a bar to any other prosecution for the same offense. The same offense has been interpreted to mean'—and I am quoting from People vs. or *In re Hess*, 45 Cal.2d 171 [288 P.2d 5].

'A person cannot be convicted of an offense other than a necessarily included offense not charged against him by indictment or information, whether or not there was evidence at his trial to show that he had committed that offense.'

Second, the conviction of the offense not charged is excess of jurisdiction and void, hence a judgment based upon it will be reversed on appeal. Citing *In re Hess* again.

THE COURT: Well, the Court—

MR. WANGER: It's our understanding that former jeopardy would bar any proceedings as far as the homicide here.

THE COURT: The Court's intent was to, in effect, dismiss the higher charge of murder to leave the lesser included offense of manslaughter stand for trial. That was my announcement at the time, and if there is any reservation on the part of the defendant, then I will have to reinstate and set aside the matter on my mistake. So I don't see the necessity of his consenting, but if he deems it necessary—

MR. HILL: If the People refuse to proceed without the consent, I don't

see that the defendant should be placed in this position, to consent either, your Honor. The Court's made its ruling based upon our motion and I think that's sufficient. I would want to research the law, I feel, and I owe an obligation to the Court and to the defendant before I go making consentient agreements with the District Attorney. It's not my trial. It belongs to Mr. Odom, and I understand the Court's ruling, and I don't think the D.A. should try to force the defendant—

THE COURT: Well, just put it this way rather plainly: The Court dismissed the higher charge and not the lesser included offense. The lesser included offense is the offense the defendant is now standing trial for, and I have in mind manslaughter, whether it be involuntary or voluntary, and I am not differentiating. I will instruct on whatever is requested in that regard, and any other included offense contained within the murder charge predicated upon the facts of the case which could include the assault with a deadly weapon as far as perhaps the scope of the evidence is concerned. I am not sure what other lesser included offenses appear to be. That's how the jury will be instructed.

Bring the jury in, Mr. Bailiff. In other words, I am not wanting to be in a position of accommodating anybody, Mr. Hill. I don't appreciate anyone taking any advantage of any newness in the law, whether the law implies the necessity for consent or otherwise, and the spirit of the ruling ought to be appreciated.

MR. HILL: Yes, your Honor. That was my understanding of the ruling.

(The jury returned into the courtroom and the following proceedings were had in their hearing:)

THE COURT: All right. You may resume your examination of the witness."

■ It is of course manifest that appellant's motion "for a dismissal of the murder charge" was defective; his counsel should have moved for a judgment of acquittal pursuant to Penal Code section 1118.1 instead of moving for a dismissal. ■ The trial judge compounded the error by merely granting appellant's motion; the judge should have ordered the entry of a judgment of acquittal as required by the section. Nevertheless, we reject respondent's contention that the judge must have meant to dismiss the murder charge pursuant to Penal Code section 1385, and that his order was a complete nullity because he did not state his reasons as required by that section. The judge knew appellant's motion was made under Penal Code section 1118.1, and albeit he said that he was not familiar with that section, we must presume that he read it. Moreover, the judge stated that appellant's motion to "dismiss the murder charge is granted," and we must also

presume that the judge knew that a motion to dismiss under section 1385 was not available to the defendant. Finally, the case was submitted to the jury on the charge of voluntary manslaughter with appropriate jury instructions, and the jury found appellant guilty on that charge. To now hold that the judge's order was a complete nullity would be illogical, as well as unrealistic, and could set a dangerous precedent.

We also resist appellant's contention that the court's order not only acquitted appellant of murder in the second degree but that it acquitted him of the necessarily included offense of voluntary manslaughter. The order was procedurally defective, and appellant's argument that it nevertheless absolved him of the murder charge is a two-edged sword. If we are to ignore the procedural defect in order to carry out the court's intention to acquit appellant of the charge of murder, we cannot in the same breath close our eyes to the court's intention to preserve the charge of voluntary manslaughter. The result would be paradoxical and would not subserve the interests of justice.

■ We believe that we must view this case in its proper perspective and in light of the obvious purpose of section 1118.1, which is not to interfere with the jury process but to insure speedy acquittals of criminal charges which are not supported by substantial evidence. We therefore spurn a slavish adherence to formality and resort to common sense for the solution. ■ While procedural exactness is to be admired, it is no longer considered an indispensable ingredient to effective judicial administration, and a court may look through form to substance if necessary to attain justice.

■ As we have indicated, it is absolutely clear that the trial judge intended to acquit appellant of the murder charge only and that his error was procedural; the trial court could have reached the result desired if the district attorney had filed an amended information charging appellant with murder in the second degree and voluntary manslaughter in separate counts, and if the court had ordered a judgment of acquittal of the murder count only. It is also absolutely clear that appellant's counsel, who up to then had acquiesced in the court's order by commencing appellant's defense on a manslaughter charge, was made aware of the procedural tangle when the district attorney asked him to consent to the manner in which they were then proceeding. But, significantly, when the trial judge threatened to rescind his defective order and said that "the court dismissed the higher charge and not the lesser included offense," and that "the spirit of the ruling ought to be appreciated" instead of insisting on a full acquittal on all charges, appellant's counsel replied, "Yes, Your Honor. That was my understanding of the ruling." Thus, appellant's counsel waived the procedural defect which he himself invited. We repeat; appellant cannot claim the

benefit of a defective ruling which his trial counsel invited and said he understood without accepting all of the consequences.

Furthermore, because counsel for both sides knew and understood the true intent behind the trial court's ruling from the very beginning, completed the trial without objection and then stood silently by while the court submitted the cause to the jury on a manslaugher issue, it must be deemed that they tacitly stipulated to an amendment to the information which made the court's ruling procedurally possible. It is not uncommon for parties to stipulate to similar amendments without actually filing amended pleadings; in essence, this is what happened in the instant case.

The judgment is affirmed.

Stone, P. J., and Coakley, J., concurred.