Filed 1/13/16  P. v. Bogan CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>LOGAN PATRICK BOGAN,<br><br>          Defendant and Appellant. | A144415<br><br>(Contra Costa County<br> Super. Ct. No. 1411420) |

Defendant Logan Patrick Bogan appeals from a judgment entered upon his plea of no contest to misdemeanor possession of methamphetamine (Health & Saf. Code § 11377, subd. (a)) and misdemeanor possession of more than 28.5 grams of marijuana (Health & Saf. Code § 11357, subd. (c)).  He contends the trial court erred in denying his pretrial motion to suppress methamphetamine seized following a patdown search and his subsequent arrest.  We affirm.

## I.  FACTUAL BACKGROUND

On the morning of October 31, 2013, Officer Justin Luo was on motorcycle traffic patrol in Brentwood.  As he sat near the intersection of Walnut Boulevard and Carnegie, he saw a car, driven by defendant, traveling southbound at a high rate of speed.  Luo used handheld radar and determined the car was traveling approximately 57 miles per hour.  The posted speed limit was 40 miles per hour.

Luo initiated a traffic stop.  Defendant told Luo he was on his way to work and that his license was suspended.  After confirming the license suspension over radio, Luo

1

issued defendant a citation and called for a tow truck. Luo also requested a cover officer who was not on motorcycle.

As Luo and defendant waited for the tow truck and the cover officer, Luo asked defendant whether he "had any kind of weapons" or "anything on [his person] that may be harmful, dangerous, [or] stick me, poke me, harm me." Defendant told Luo he might have a "small work knife." Luo conducted a patdown search.

As Luo conducted the search, he felt a triangular object in defendant's left pocket. Luo removed items from the pocket as he tried to reach the triangular object and discovered a small bag of methamphetamine. Luo placed defendant under arrest. Defendant then told Luo he also had a jar of marijuana in his car. As defendant was being processed into the jail, Luo also found a second bag of methamphetamine on defendant.

At the hearing on defendant's motion to suppress evidence, Luo testified that he asked defendant whether he had any weapons on his person "as a matter of officer safety" because he was planning on leaving defendant alone with the cover officer, whom he believed would offer defendant a ride. He conducted the patdown search after defendant told him he might have a work knife. Luo testified he became "concerned" that the triangular object he felt in defendant's left pocket might be defendant's knife because in his experience, "a person can consider a knife to be anything sharp." For example, Luo had "seen throwing stars that are in the shapes of diamonds [and] triangles . . . ." On cross-examination, Luo testified that he removed the triangular object and the bag of methamphetamine, but did not recall what the triangular object had been. He also testified that defendant was cooperative and had not made furtive gestures, and that prior to finding the first bag of methamphetamine, Luo was not planning to arrest defendant.

## II. DISCUSSION

Defendant argues the trial court erred in denying his motion to suppress because (1) Luo had no justification to submit defendant to a patdown search, (2) Luo exceeded

2

the permissible scope of the patdown search when he removed the bag of methamphetamine from defendant's pocket, and (3) the People failed to meet their burden to show that the discovery of the methamphetamine would have been inevitable. Defendant does not challenge his initial stop, his conversation with Luo, or the seizure of the jar of marijuana from his car.

In reviewing a ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, when they are supported by substantial evidence. (*People v. Hoyos* (2007) 41 Cal.4th 872, 891 (*Hoyos*), overruled in part on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919–920; *People v. Glaser* (1995) 11 Cal.4th 354, 362.) However, in determining whether a search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Hoyos*, at p. 891; *Glaser*, at p. 362.)

### A. Patdown Search

A police officer may initiate a warrantless patdown search when the officer has reason to believe that a suspect may be armed and dangerous. (*Terry v. Ohio* (1968) 392 U.S. 1, 27 (*Terry*).) In deciding whether an officer was justified in conducting a patdown search, a court must consider "whether 'the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate.' " (*Pennsylvania v. Mimms* (1977) 434 U.S. 106, 112 (*Mimms*).) The fact that a suspect is armed—and thus presently dangerous—is enough to justify a patdown search. (*Id.* at p. 112.) In the context of traffic stops, it is well established that officers may conduct "investigative activities beyond the original purpose of a traffic stop . . . as long as they do not prolong the stop beyond the time it would otherwise take." (*People v. Brown* (1998) 62 Cal.App.4th 493, 498.)

Here, it is undisputed that defendant told Luo he might have a weapon—a "small work knife"—on his person as they waited for the tow truck and the cover officer, whom Luo believed might offer defendant a ride. Given defendant's admission and the fact that

3

Luo was alone, he was justified in conducting a patdown search of defendant for officer safety. As the trial court noted: "[Luo] was clearly in a different position than what we normally hear because he's a motor officer doing traffic enforcement. And the reason that's significant is because he's on a motorcycle. He's not in a marked police car and he is not working with another officer, so he's alone and he's conducting his work. [¶] . . . [B]efore backup gets there [is] when [Luo] asks is there anything on [defendant's] person that could be dangerous to him, that could stick him or poke him . . . [a]nd at that point he has the right to ask him that question and the defendant has given him an answer, which is in fact I might have a small knife on me." (See *People v. Avila* (1997) 58 Cal.App.4th 1069, 1075 ["The Fourth Amendment was not designed to protect a defendant from his own candor"]; *Arizona v. Johnson* (2009) 555 U.S. 323, 330 [traffic stops are " 'especially fraught with danger to police officers' "].) Under these circumstances, "there is little question the officer was justified [in his actions]. . . . [Defendant's admission] permitted the officer to conclude that [defendant] was armed and thus posed a serious and present danger to the safety of the officer. . . . [A]ny man of 'reasonable caution' would have likely conducted the [patdown search]." (*Mimms*, *supra*, 434 U.S. 106 at p. 112.)

Defendant, citing *People v. Bain* (1971) 5 Cal.3d 839 and *In re George W.* (1998) 68 Cal.App.4th 1208, nevertheless argues that Luo had "no reasonable articulable suspicion [defendant] was armed and dangerous" because it is "not unlawful" to possess a pocketknife[1] or other small knife. His reliance on those cases is misplaced, as neither involved a patdown search. Rather, *Bain* and *In re George W.* examined whether the defendants in those cases, who had small pocketknives on their person, could be convicted of possessing a dirk or dagger under former Penal Code sections 635k and 12020, subd. (a), respectively. They are thus inapplicable.

---

[1] There is no evidence in the record that the "small work knife" defendant possessed was a pocketknife.

Defendant also argues Luo was not justified in conducting a patdown search because the prosecution did not show Luo had a duty to transport him from the area where defendant's car was towed and defendant did not otherwise consent to a search. When an officer has a duty to ensure that an individual is transported after his car is towed, the officer may conduct a patdown search for weapons to ensure his own safety or the safety of the tow truck driver transporting the individual. (*People v. Tobin* (1990) 219 Cal.App.3d 634, 641.)

Relying on *People v. Scott* (1976) 16 Cal.3d 242, 244–245 (*Scott*), defendant contends that police had no duty to transport him and, as a result, the patdown search based on officer safety was not justified. In *Scott*, two officers were driving when they saw an intoxicated man and his son urinating on the island formed by an off-ramp on Highway 101. (*Scott*, *supra*, 16 Cal.3d at p. 245.) The officers did not arrest the man but instead volunteered to give him and his son a ride to San Francisco. (*Id.* at p. 246.) The officers placed the son in their patrol car and then conducted a patdown search of the man, who neither objected nor consented to the search. (*Id*. at pp. 245–246.) The officers recovered drugs, and the man subsequently pled guilty to two drug charges after his motion to suppress was denied. (*Id*. at p. 246.) Our Supreme Court reversed, holding that in order to justify a patdown search where no duty to transport exists, an officer must inform the individual that he has a right to refuse a ride, but if he accepts one, he will be subjected to a patdown search for weapons. Because the defendant in *Scott* had not given his consent to the patdown search and the officers had no duty to transport or any reason to believe he was armed and dangerous, the search was not justified. (*Scott*, *supra*, 16 Cal.3d at pp. 250–251.)

*Scott* is inapplicable here. Even assuming arguendo that Luo had no duty to transport defendant after having his car towed, Luo—through defendant's own admission—had reason to believe defendant was armed and thus dangerous. (See

5

*Mimms*, *supra*, 434 U.S. at p. 112.)  Accordingly, the trial court did not err in finding that Luo was justified in conducting a patdown search of defendant.

## B.  Scope of Search

Defendant also argues that even if Luo was justified in conducting the patdown search, he exceeded its permissible scope by seizing the bag of methamphetamine despite knowing it was not a weapon.

When a warrantless patdown search is justified, its scope is generally limited to the discovery of a hidden weapon.  (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 375–379.)  Hence, an officer may not search beyond a suspect's outer clothing unless he or she feels an object that could reasonably be thought a weapon or if the object's incriminating character is "immediately apparent."  (*Id.* at p. 379.)  However, when a patdown search reveals a hard object that might be a weapon, an officer need not be absolutely certain before removing and inspecting it.  (*People v. Limon* (1993) 17 Cal.App.4th 524, 535.)

*In re Donald L.* (1978) 81 Cal.App.3d 770 (*Donald L.*) is instructive.  In *Donald L.*, the officer conducted a patdown search of the defendant and felt a hard object resembling a knife.  The officer reached into the defendant's pocket to remove the object and, in the process, felt several hard items he believed to be jewelry; the officer subsequently removed a razor blade and several pieces of stolen jewelry from the defendant's pocket.  (*Id.* at pp. 773–774.)  The appellate court rejected the defendant's challenge to the patdown search and seizure of the jewelry, holding:  "Once the officer felt a hard object which he thought was a knife, he was justified in removing the object from appellant's pocket.  [Citations.]  If, in the course of removing a suspected weapon from the detainee's pocket, the officer removes additional objects which turn out to be contraband . . . , the removal of the additional objects does not constitute an unlawful search and seizure."  (*Id.* at p. 775.)

6

Here, Luo testified he was concerned the triangular object he felt in defendant's pocket was a knife. As such, his limited intrusion into defendant's pocket was justified to determine whether the object was a weapon. Luo did not need absolute certainty that the object was a knife to retrieve it from defendant's pocket for inspection. (*Limon*, *supra*, 17 Cal.App.4th at p. 535.) Moreover, Luo's removal of the bag of methamphetamine "in the course of removing a suspected weapon" was reasonably necessary to disarm defendant, and was thus justified. (*Donald L.*, *supra*, 81 Cal.App.3d at p. 775.)

*People v. Collins* (1970) 1 Cal.3d 658 (*Collins*), cited by defendant, is inapposite. In *Collins*, the officer conducted a patdown search of the defendant and felt a soft lump in his pocket. The officer reached into the pocket and pulled out a "lid" of loosely-packed marijuana. (*Id.* at pp. 664–665.) At a hearing to suppress the marijuana, the officer testified he " '[thought] it was a weapon,' " but offered no other details; the trial court granted the defendant's motion to suppress the marijuana and dismissed the case. (*Id.* at p. 665.) On appeal, our high court rejected the officer's conclusory statement that he believed the defendant had a weapon and held that the officer exceeded the permissible scope of the patdown search because "prior to the intrusion into defendant's pocket, [the officer's] search had not disclosed evidence which would reasonably support a belief that he had located a weapon." (*Id.* at pp. 663–664.)

This is not the case here. Luo had good reason to believe, based on defendant's own admission, that defendant was armed. Moreover, unlike the officer in *Collins*, Luo reached into defendant's pocket only after he felt a hard object that could have been a knife, and removed the methamphetamine in the course of retrieving the suspected weapon. The trial court did not err in finding that Luo was justified in removing the bag of methamphetamine.[2]

---

[2] Defendant also cites *People v. Hana* (1970) 7 Cal.App.3d 664, 667 and *People v. Britton* (1968) 264 Cal.App.2d 711. Both cases are distinguishable. (*Hana*, at pp. 667, 670 [officer not justified in conducting patdown search because there was no reason to

7

### C. Second Bag of Methamphetamine

Luo testified that he found the second bag of methamphetamine while conducting a routine booking search after arresting defendant. Defendant does not challenge the booking search procedure, but rather argues that the second bag of methamphetamine should be suppressed as "fruit of the poisonous tree." (*Wong Sun v. United States* (1963) 371 U.S. 471, 487–488.) Inasmuch as we have determined that Lou's patdown search of defendant and subsequent seizure of the first bag of methamphetamine were reasonable under the Fourth Amendment, defendant's challenge to the seizure of the second bag of methamphetamine is meritless. We therefore need not reach defendant's inevitable discovery argument.

## III. DISPOSITION

The judgment is affirmed.

---

suspect defendant was armed or dangerous]; *Britton*, at pp. 715–717 [officer not justified in reaching into suspect's pocket after patdown search revealed no items that could reasonably be interpreted to be weapons].)

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.